**Joshua P. Stump, OSB #974075**
joshua.stump@harrang.com
HARRANG LONG GARY RUDNICK P.C.
1001 SW Fifth Avenue, 16th Floor
Portland, OR 97204
Telephone:   503-242-0000
Facsimile:   503-241-1458
Of Attorneys for Plaintiff UNIVERSITY OF OREGON

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNIVERSITY OF OREGON,** | Case No. 6:15-cv-00260-AA |
| Plaintiff, | **AMENDED COMPLAINT** |
| vs. | |
| **MONICA DRUMMER and ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC., an Illinois Corporation,** | |
| Defendants. | |
| **MONICA DRUMMER and ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC., an Illinois Corporation,** | |
| Third-Party Plaintiffs, | |
| vs. | |
| **MARSH U.S. CONSUMER a service of SEABURY & SMITH, INC., a Delaware Corporation,** | |
| Third-Party Defendants, | |

Page 1 – **AMENDED COMPLAINT**

Plaintiff University of Oregon (the "University"), alleges as follows:

## JURISDICTIONAL FACTS

1.

The University of Oregon is, and was at all relevant times, an educational institution located in Eugene, Oregon in the county of Lane.

2.

Monica Drummer ("Drummer") is an individual, who at all relevant times, was a registered insurance agent, authorized to do business in the State of Oregon. Upon information and belief, at all relevant times, Drummer was an agent of Arthur J. Gallagher Risk Management Services, Inc. ("Arthur Gallagher"), conducting her business from 6399 S Fiddlers Green Circle, Suite 200, Greenwood Village, Colorado, 80111. As an agent of Arthur Gallagher, Drummer owed Arthur Gallagher and its clients, including the University, a duty of skill and care to provide advice and respond to the insurance needs, including putting in place policies to be bound.

3.

Arthur Gallagher, at all relevant times, was an insurance broker licensed to do business in the State of Oregon. Arthur Gallagher's corporate headquarters are located at 2 Pierce Place, Itasca, Illinois, 60143.

4.

The causes of action described below arose in Lane County, Oregon, in connection with the University of Oregon Athletics Department and the University of Oregon football coaches, located at 2727 Leo Harris Parkway, Eugene, Oregon, 97401.

**OPERATIONAL FACTS**

5.

In July 2012, the University, through Eric Roedl ("Roedl"), its Executive Senior Associate Athletic Director - Finance & Administration, was approached by John Laskowski ("Laskowski"), a broker from Marsh, an insurance broker and risk management firm, concerning the possibility of purchasing insurance to cover the risk that the University would need to pay its football coaches large incentive bonuses based on their contracts for the upcoming football season. Roedl sought coverage for all potential incentive bonuses paid to football coaches. Roedl and Laskowski, along with other employees of Marsh, negotiated the terms of an insurance policy, effective for the 2012-2013 football season, for the University of Oregon football coaches.

6.

In August 2012, Roedl approached Ellen Holland ("Holland"), the Chief Risk Officer of the Oregon University System ("OUS"), regarding his desire to purchase an insurance policy through Laskowski and Marsh that would cover all potential incentive bonuses the University could be required to pay its football coaches during the 2012-2013 football season.

7.

OUS is a statutorily created governing body administered by the Oregon State Board of Higher Education. OUS operates pursuant to Oregon Revised Statutes, Chapter 351, 352, and 354. Until legislation was passed in 2013, which became effective July 1, 2014, OUS was the governing authority and legislative body responsible for all seven public universities in the State of Oregon.

8.

OUS, pursuant to ORS 351.070(2)(a), is responsible for "establishing procedures for the purchasing, procurement, and contracting of goods, services, and information technology, for the benefit of the Oregon University System and all the public universities."

9.

OUS, at all relevant times, was responsible for purchasing, procuring, negotiating, and contracting for insurance coverage for the benefit of the University.

10.

Pursuant to OUS requirements regarding insurance contracts for the universities, Holland engaged Arthur Gallagher, OUS's preferred broker, to procure the insurance Roedl requested. In September 2014, OUS engaged Drummer from Arthur Gallagher to procure the requested insurance policy for the University of Oregon.

11.

To avoid having to re-negotiate the terms of the insurance contract with Roedl, Drummer reviewed the full email correspondence between Roedl and Marsh regarding the terms of the previously negotiated insurance policy. Further, Drummer spoke with Marsh to clarify various provisions of the contract. Specifically, Drummer attempted to clarify which sports were included in coverage, the potential deductible, and whether the premiums were still valid given that the football season had already started and a game had already been played.

12.

OUS and Drummer, with assistance from Marsh, negotiated the terms of the insurance contract. Because the insurance policy was intended to cover the University of Oregon football

coaches, and to ultimately benefit the University of Oregon, OUS and Drummer worked with Roedl and the University of Oregon regarding the coverage.

13.

The contracts with coaches at the University of Oregon were set up with escalating bonuses based on the performance of the football team in a given season.  The bonuses capped out if the team went undefeated and won the PAC-12 conference and the BCS national championship game.  There were smaller bonuses based on winning fewer than every game and participating in and winning lesser bowl games.  The University of Oregon was only interested in an insurance policy that covered all possible scenarios.  Roedl made clear that the policy the University of Oregon wanted was one that covered all potential incentive bonuses paid to University of Oregon football coaches during the 2012-2013 season.

14.

On September 7, 2012, the University of Oregon reviewed the negotiated coverage and was asked to confirm it was indeed the coverage requested.  Roedl reviewed the negotiated policy, which appeared to discuss only the maximum bonuses payable to coaches, including: playing in the BCS Championship Game; winning the BCS Championship Game; winning the PAC 12 Championship Game; winning 12 Regular Season Games; and finishing ranked #1 in the Associated Press or Coach's Poll.  Attempting to confirm that the policy covered all potential bonuses, including the lesser potential bonuses, the University of Oregon sent a follow-up email seeking clarification of the coverage terms.  Roedl, acting on behalf of the University of Oregon sent the following email on September 7, 2012 to Deb Donning ("Donning") who had been working with Drummer on behalf of the University of Oregon.

Page 5 – **AMENDED COMPLAINT**

> "Thanks Deb.  To be sure we are under the same understanding, can you please confirm the reimbursable claim amount for the following achievements:
>
> Compete in a Non-BCS Bowl: $151,591.58
>
> Win Non-BCS Bowl: $121,125
>
> Year-End Ranking of #15: $160,500
>
> Total Claim Reimbursement would be $433,222.58"

15.

Donning forwarded Roedl's email described above to OUS and Drummer.  Donning's email read:

> "Greetings, we just have one clarification question.  Please confirm the maximum amount indicated is the ceiling of coverage but does not preclude lower amounts being covered.  Eric has provided an example below.  We believe this is the case, but want to confirm. "

16.

Drummer confirmed that the scenario hypothesized by Roedl in his email would be covered by the policy.  Drummer emailed Donning and OUS the following:

> "That is correct.  Any one item can trigger a partial payment of the loss limit.  Referring to page 6 of the quote, if any one or combination of events occurs, the policy will pay.  That is per my conversation with John/Marsh yesterday."

Page 6 – **AMENDED COMPLAINT**

17.

On September 7, 2012, a policy through Lloyds of London ("Lloyds") was offered for consideration and bound. The University paid a premium of $489,940 for the policy. The policy listed the "Assured" as "The State of Oregon acting by and through the State Board of higher education on behalf of the Oregon university system." All involved parties understood that the policy benefitted the University and covered the potential bonus payments to University of Oregon football coaches in the 2012-2013 season.

18.

The University of Oregon football team had a very successful 2012-3013 football season. The team finished second in the PAC-12 with an overall record of 11-1. The team beat Kansas State in the Fiesta Bowl and finished ranked #5 in the country.

19.

After the season was over, the University made a claim under their policy with Lloyds for the bonuses paid. Lloyds, through Houston Casualty Company ("HCC"), the third-party administrator and Arthur Gallagher, informed the University that their claim for insurance would be denied because the insurance covered only the scenarios which triggered the maximum bonuses. Lesser bonuses were not covered under the policy.

20.

The University paid out $687,965.74 in bonuses to football coaches during the 2012-2013 football season.

Page 7 – **AMENDED COMPLAINT**

## FIRST CLAIM FOR RELIEF

(Negligent Failure to Procure Insurance against Drummer and Arthur Gallagher)

21.

University of Oregon realleges paragraphs 1 through 20 as it fully set forth herein.

22.

In or about August 2012, the University of Oregon, through OUS, contacted Drummer and Arthur Gallagher regarding its insurance needs for the University of Oregon football coaches.

23.

Throughout the course of negotiations, the University clearly expressed its desire to insure against all potential performance bonuses paid to University of Oregon football coaches.

24.

Drummer assured the University and OUS that lesser bonuses paid out to the University of Oregon football coaches would be covered by the insurance policy.

25.

In or about September 2012, Drummer bound the insurance policy.

26.

As an Arthur Gallagher agent, Drummer owed the University, as the intended beneficiary of the insurance contract between OUS and Lloyds, a duty of skill and care to procure the policy requested by the University.

27.

Drummer and Arthur Gallagher breached their duty to the University in one or more of the following ways:

a. In failing to advise the University that the coverage requested was not the coverage being provided;

b. In failing to provide the requested coverage;

c. In assuring the University that lesser bonuses would be covered by the insurance policy.

28.

It was foreseeable that if Drummer and Arthur Gallagher breached their duty to the University in one or more of the aforementioned particulars, the University would sustain injury. Monetary loss sustained during the course of the football season is the type of harm that the University sought to protect itself against in securing the insurance policy.

29.

The University paid bonuses to its coaches and Lloyd's refused to honor the policy Drummer bound.

30.

The University has performed all conditions precedent to the contract to procure insurance, including payment of premiums.

31.

As a result of Drummer and Arthur Gallagher's failure to procure the requested coverage, the University has sustained damages of $687,965.74.

32.

Plaintiff is entitled to prejudgment interest at the statutory rate of nine percent (9%) per annum from the date all bonuses were paid against both Drummer and Arthur J. Gallagher.

Page 9 – **AMENDED COMPLAINT**

**SECOND CLAIM FOR RELIEF**

(Negligent Misrepresentation against Drummer and Arthur Gallagher)

33.

The University realleges paragraphs 1 through 20 as if fully set forth herein.

34.

In or about August 2012, the University, through OUS, contacted Drummer and Arthur Gallagher regarding its insurance needs for the University of Oregon football coaches. Through the course of negotiations, Drummer represented that the requested insurance policy covered not only the maximum performance bonuses, but also lesser performance bonuses the University may be required to pay its football coaches during the 2012-2013 football season.

35.

In or about September 2012, Drummer facilitated binding the insurance policy with Lloyds.

36.

As Arthur Gallagher's agent, Drummer was acting within the course and scope of her business in causing the insurance policy between Lloyds and OUS to be bound.

37.

In or about January 2013, the University was required to pay performance bonuses to its football coaches. The University made a claim against its insurance policy for coverage and was ultimately denied.

38.

In representing that lesser performance bonuses would be covered by the insurance policy, Drummer and Arthur Gallagher provided the University with false information on which

the University justifiably and reasonably relied in securing the insurance policy. As a result of its reliance on their representations, the University of Oregon did not secure the insurance policy desired.

39.

Drummer and Arthur Gallagher failed to exercise reasonable care in providing the University with information concerning the coverage under the insurance policy.

40.

Arthur Gallagher had a special relationship with the University. As an insurance broker, Arthur Gallagher owed the University a special duty of skill and care to ensure that its agent, Drummer was familiar with the insurance coverages she was selling and to ensure that the coverage Drummer caused to be bound was the coverage that the University requested.

41.

As a result of Drummer and Arthur Gallagher's negligence, the University has sustained damages of $687,965.74.

42.

Plaintiff is entitled to prejudgment interest at the statutory rate of nine percent (9%) per annum from the date all bonuses were paid against both Drummer and Arthur J. Gallagher.

### THIRD CLAIM FOR RELIEF

(Breach of Contract against Arthur Gallagher)

43.

The University realleges paragraphs 1 through 20, as if fully set forth herein.

44.

OUS and Arthur Gallagher had a binding and enforceable contract by which Arthur Gallagher would obtain insurance for OUS, for the benefit of the University as described in detail herein. The University of Oregon was clearly and explicitly an intended beneficiary of the contract.

45.

OUS and the University performed all conditions precedent under the contract for insurance, including payment of all requested premiums.

46.

Arthur Gallagher has breached its contract and failed to perform their obligations thereunder by:

    a.   Representing that lesser bonuses would be covered by the insurance policy; and

    b.   Failing to provide the coverage pursuant to the University's requests.

47.

As a result of Arthur Gallagher's actions, the University has sustained damages of $687,965.74.

48.

Plaintiff is entitled to prejudgment interest at the statutory rate of nine percent (9%) per annum from the date all bonuses were paid against Arthur Gallagher.

**FOURTH CLAIM FOR RELIEF**

(Breach of Contract - Promissory Estoppel against Arthur Gallagher)

49.

The University realleges paragraphs 1 through 20, as if fully set forth herein.

Page 12 –    **AMENDED COMPLAINT**

50.

In or about August 2012, the University, through OUS, contacted Drummer and Arthur Gallagher regarding its insurance needs for the University of Oregon football coaches. OUS and Arthur Gallagher contracted to secure insurance for the benefit of the University.

51.

As Arthur Gallagher's agent, Drummer was acting within the course and scope of her business in working with OUS and the University to secure insurance coverage.

52.

The University requested an insurance policy that covered all the potential bonus payments the University may be required to make to its football coaches during the 2012-2013 season.

53.

During the course of negotiations between Drummer, OUS and the University, Drummer assured the University that the insurance policy covered not only the maximum performance bonuses, but also lesser performance bonuses the University may be required to pay its football coaches during the 2012-2013 football season as described in more detail herein.

54.

The University justifiably and reasonably relied on the representations made by Drummer.

55.

The University would not have agreed to purchase any insurance if the lesser performance bonuses were not included in the coverage.

Page 13 –    **AMENDED COMPLAINT**

56.

As a result of Drummer's representations, the University agreed to the contract and was subsequently bound to an insurance policy that failed to cover the lesser performance bonuses.

57.

As a result of promises of Arthur Gallagher, made through Drummer, the University has sustained damages of $687,965.74.

58.

Plaintiff is entitled to prejudgment interest at the statutory rate of nine percent (9%) per annum from the date all bonuses were paid against Arthur Gallagher

WHEREFORE the University prays for relief on its claims, as follows:

1.      On its First Claim for Relief against Drummer and Arthur Gallagher, $687,965.74 in damages or such sum as is proven at trial, plus prejudgment interest at the statutory rate of nine percent (9%) per annum from the date all bonuses were paid, and costs and disbursements incurred herein;

2.      On its Second Claim for Relief against Drummer and Arthur Gallagher, $687,965.74 in damages or such sum as is proven at trial, plus prejudgment interest at the statutory rate of nine percent (9%) per annum from the date all bonuses were paid, and costs and disbursements incurred herein;

3.      On its Third Claim for Relief against Arthur Gallagher, $687,965.74 in damages or such sum as is proven at trial, plus prejudgment interest at the statutory rate of nine percent (9%) per annum from the date all bonuses were paid, and costs and disbursements incurred herein;

4.      On its Fourth Claim for Relief against Arthur Gallagher, $687,965.74 in damages or such sum as is proven at trial, plus prejudgment interest at the statutory rate of nine percent (9%) per annum from the date all bonuses were paid, and costs and disbursements incurred herein; and

5.      Granting the University such other relief as the court deems equitable and just.

DATED this 13th day of March, 2015.

HARRANG LONG GARY RUDNICK P.C.

By:   /s/ Joshua P. Stump
        Joshua P. Stump, OSB #974075
        Of Attorneys for Plaintiff UNIVERSITY OF OREGON

Page 15 –    **AMENDED COMPLAINT**

# CERTIFICATE OF SERVICE

I certify that on March 13, 2015, I served or caused to be served a true and complete copy of the foregoing **AMENDED COMPLAINT** on the party or parties listed below as follows:

- ☒ Via CM / ECF Filing
- ☐ Via First Class Mail, Postage Prepaid
- ☐ Via Email
- ☐ Via Personal Delivery

John E. Zehnder, OSB No. 054979
Robert P. Schulhof, Jr., OSB No. 000018
SCHEER & ZEHNDER LLP
101 SW Main Street, Suite 1600
Portland, OR  97204
  of Attorneys for Defendants and Third-Party Plaintiffs

>                             HARRANG LONG GARY RUDNICK P.C.
>
>
>                             By:   /s/ Joshua P. Stump
>                                  Joshua P. Stump, OSB #974075
>                                  Of Attorneys for Plaintiff UNIVERSITY OF OREGON

P0492093.v1

Page 16 –    **AMENDED COMPLAINT**