James T. McDermott
jmcdermott@balljanik.com
OSB No. 933594
Gabriel M. Weaver
gweaver@balljanik.com
OSB No. 125970
BALL JANIK LLP
101 SW Main Street, Suite 100
Portland, OR 97204-3219
(503) 228-2525
(503) 226-3910 fax

Attorneys for Third-Party Defendant Marsh

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DEPARTMENT OF EUGENE

| | |
|---|---|
| UNIVERSITY OF OREGON,<br><br>Plaintiff,<br><br>v.<br><br>MONICA DRUMMER and ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC., an Illinois Corporation,<br><br>Defendants | Case No. 6:15-CV00260-AA<br><br>REPLY MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT MARSH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT FOR FAILURE TO STATE A CLAIM<br><br>Request for Oral Argument |
| MONICA DRUMMER and ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC., an Illinois Corporation,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>MARSH U.S. CONSUMER a service of SEABURY & SMITH, INC., a Delaware Corporation,<br><br>Third-Party Defendant. | |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

REPLY ARGUMENT .....................................................................................................................2

    1.    The Third-Party Complaint Does Not State a Plausible Claim for Relief...................2

    2.    There is no Special Relationship Between Third-Party Plaintiffs and Marsh ........................................................................................................................4

    3.    This Court Should Dismiss Third-Party Plaintiffs' Contribution Claim Because Third-Party Plaintiffs Fail To Plausibly Allege that Marsh is Liable to Plaintiff in Tort ...........................................................................................7

        A.    Third-Party Plaintiffs' Breach of the Sub-Broker Agreement is Relevant to This Court's Resolution of Marsh's Motion to Dismiss............10

CONCLUSION.............................................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.,*
    583 F.2d 426 (9th Cir. 1978) .................................................................................. 10
*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ............................................................................... 3, 4, 5, 10
*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................... 2, 4, 5, 10
*Bivens v. Six Unknown Named Agents,*
    403 U.S. 388 (1971) ................................................................................................ 3
*Brooks v. Ross,*
    578 F.3d 574 (7th Cir. 2007) ................................................................................... 3
*Conway v. Pacific University,*
    243 Or. 231 (In special relationships, as o .............................................................. 7
*Culpepper v. Wells Fargo Bank, N.A.,*
    2013 WL 3199673 at *4 (D.Or., June 19, 2013) .................................................... 5
*Decker v. GEMB Lending, Inc.,*
    2012 WL 5304144 (D.Or., Sep. 13, 2012) .............................................................. 5
*Fazzolari v. Portland School Dist.,*
    No. 1J, 303 Or. 1 (1987) ......................................................................................... 4
*Fleshman v. Wells Fargo Bank, N.A.,*
    27 F. Supp. 3d 1127 (D. Or. 2014) ...................................................................... 5, 6
*Galbraith v. MML Investor Services, Inc.,*
    2009 WL 4955617 (D.Or. Dec. 11, 2009) ........................................................... 8, 9
*Georgetown Realty, Inc. v. Home Ins. Co.,*
    313 Or. 97 (1992) .................................................................................................... 6
*Hale v. Groce,*
    304 Or. 281, 744 P.2d 1289 (1987) ........................................................................ 4
*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) .............................................................................. 10
*Landers v. Quality Communications, Inc.,*
    771 F.3d 638 (9th Cir. 2014) .................................................................................. 3
*McTernan v. City of York,*
    577 F.3d 521 (3rd Cir. 2009) .................................................................................. 3
*Medici v. J.P. Morgan Chase, N.A.,*
    No. 03:11-cv-00959-HA, 2014 WL 199232 (D.Or. Jan. 15, 2014) ........................ 6
*Meininger v. Henris Roofing and Supply of Klamath County, Inc.,*
    137 Or. App. 451 (1995) ......................................................................................... 9
*Numrich v. Ntekpere,*
    2013 WL 10545882 at *3 (D.Or., Feb. 14, 2013) ................................................... 5
*Onita Pacific Corp. v. Trustees of Bronson,*
    315 Or. 149 (1992) .................................................................................................. 4
*Wright v. Kia Motors America Inc.,*
    2007 WL 316351 at *4-5, (D.Or., Jan. 29, 2007) ................................................... 5

## STATUTORY AUTHORITIES

ORS 31.800 ..................................................................................................................... 7

## RULES AND REGULATIONS

Fed. R. Civ. P. 12(b)(6) ................................................................................. 4, 5, 10, 11

## INTRODUCTION

Marsh should not be a third-party defendant in this case. This case is a dispute between the University of Oregon (the "University") and its insurance broker, Arthur J. Gallagher Risk Management Services ("AJG") over an insurance policy the University purchased to cover certain incentive bonuses for the University's football coaching staff in the 2012-2013 college football season. Marsh's role in the transaction was limited and brief. Before being replaced as broker by AJG, Marsh assisted the University in obtaining a quote for contractual bonus insurance. Ultimately, the University chose to complete the transaction through its own broker of record, AJG. From the time that AJG replaced Marsh as broker, Marsh had no further communications with the University regarding the insurance quote Marsh had obtained. Ultimately, AJG was not able to obtain a policy that offered better terms than the quote obtained by Marsh, so AJG entered into a sub-broker agreement with Marsh and asked Marsh to bind the coverage Marsh had originally quoted for the University.

The following facts are undisputed:

(1) This case is governed by Oregon law;

(2) Marsh and AJG are parties to a contract (the "Sub-Broker Agreement"), which dictates the terms of their relationship;

(3) AJG has not alleged that Marsh violated the Sub-Broker Agreement;

(4) All of AJG's third-party claims against Marsh sound in negligence and are subject to the economic loss doctrine;

(6) The University has not accused Marsh of any wrongdoing in connection with the procurement of the policy; and

Page 1 –   REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY
            COMPLAINT

(7) AJG has not identified a single case in which a court has determined that co-brokers, such as AJG and Marsh, were in a special relationship with each other.

In light of these undisputed facts, this Court should dismiss each of Third-Party Plaintiffs' three remaining claims for failure to state a claim under Oregon law.[1] This Court should dismiss the third-party negligence and negligent misrepresentation claims because both negligence-based claims seek damages for pure economic losses but do not plausibly allege the existence of a special relationship between Marsh and AJG.[2] This Court should similarly dismiss Third-Party Plaintiffs' contribution claim, because neither the complaint nor the third-party complaint plausibly alleges that Marsh is liable to the plaintiff in tort, without which Third-Party Plaintiffs cannot maintain a cause of action for contribution. Accordingly, this Court should dismiss the third-party complaint in its entirety for failure to state a claim upon which relief can be granted.

## REPLY ARGUMENT

### 1. The Third-Party Complaint Does Not State a Plausible Claim for Relief

This Court should dismiss AJG's third-party complaint because it fails to state a plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that, at a minimum, a plaintiff must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of alleged wrongdoing in order to state a "plausible" claim for relief and survive a motion to dismiss). Courts apply a two-part test to determine if a pleading is

---

[1] Third-Party Plaintiffs originally asserted four causes of action in its third-party complaint against Marsh, but have agreed to voluntarily dismiss their indemnity claim.

[2] Third-Party Plaintiffs concede that their third-party negligence and negligent misrepresentation claims are subject to the economic loss doctrine.

Page 2 –  REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT

sufficiently plausible to survive a motion to dismiss. First, courts must identify "pleadings that because they are mere conclusions, are not entitled to the assumption of truth. After identifying and disregarding mere conclusions, courts determine whether the remaining well-pleaded factual allegations "plausibly give rise to a claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The third-party complaint falls far short of this standard. Much of the third-party complaint consists of mere conclusory statements (*e.g.*, that Marsh was in a superior position *vis a vis* AJG) that this Court should disregard. The remaining factual allegations do not state a claim for relief because they do not plausibly allege the existence of a special relationship between Marsh and AJG, nor do they plausibly allege that Marsh is liable to the University in tort.

Third Party Plaintiff attempt to sidestep *Iqbal's* pleading standard by arguing that the *Iqbal* decision is limited to *Bivens* actions against the federal government for violations of constitutional rights. Opposition to Marsh's Motion to Dismiss ("Opp."), p. 4, citing *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Third-Party Plaintiffs are incorrect. Federal circuit courts, including the Ninth Circuit, have routinely applied the *Iqbal* two-part plausibility analysis outside of the context of *Bivens* actions. *See, e.g. Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014) (applying *Iqbal* plausibility standard to Fair Labor Standards Act claims and dismissing action for failure to state a claim); *McTernan v. City of York*, 577 F.3d 521, 530 (3rd Cir. 2009) (noting that the *Iqbal* and *Twombly* "plausibility" standard applies to motions to dismiss in all cases); *Brooks v. Ross*, 578 F.3d 574, 580-81 (7th Cir. 2007) (holding that factual allegations are insufficient if they are "sketchy or implausible" or if they are mere

Page 3 –   REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT

"abstract recitations of the elements of a cause of action"). As discussed below, this Court should dismiss the third-party complaint because it does not state a plausible claim for relief under any cognizable legal theory, as required by *Iqbal* and *Twombly*.

### 2. There is no Special Relationship Between Third-Party Plaintiffs and Marsh

Third-Party Plaintiffs do not dispute that each of their claims is subject to the economic loss rule. As such, Third-Party Plaintiffs' negligence and negligent misrepresentation claims are barred by the economic loss doctrine unless Third-Party Plaintiffs can show that Marsh owed special duties of care to Third-Party Plaintiffs[3]. *See Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 159 (1992); *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1 (1987) (Oregon does not recognize negligence claims for economic loss in the absence of a specific duty); *Hale v. Groce*, 304 Or. 281, 284, 744 P.2d 1289 (1987) ("[O]ne ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property.")

Third-Party Plaintiffs erroneously assert (absent citation to any authority) that this Court cannot determine the existence (or lack thereof) of a special relationship in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Plaintiff is quite mistaken. On multiple occasions, this Court has granted motions to dismiss under Fed. R. Civ. P. 12(b)(6) because the complaint fails to plausibly allege the existence of a special relationship.

For example, in *Fleshman v. Wells Fargo Bank, N.A.*, plaintiffs sued their mortgage lender and servicer for breach of contract, negligence, and breach of the Oregon Unlawful Trade Practices Act, alleging that the lender/servicer mishandled loan documents, applied loan

---

[3] Not surprisingly, Third-Party Plaintiffs apparently concede that there is no special relationship between Marsh and Third-Party Plaintiff Monica Drummer. Therefore, at an absolute minimum, this Court should dismiss Drummer's claims for negligence and negligent misrepresentation *vis a vis* Marsh.

Page 4 –   REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY
           COMPLAINT

payments to the wrong account, and inadvertently disclosed plaintiffs' sensitive personal and financial information to another borrower. *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1137 (D. Or. 2014). Pursuant to Fed. R. Civ. P. 12(b)(6), this Court dismissed plaintiffs' negligence claim with prejudice because, as a matter of law, no special relationship existed between the defendant, as lender/servicer, and plaintiffs, as borrowers. *Id.* This Court has also granted a motion to dismiss for failure to state a claim based on the absence of a special relationship between an employee and his employer. *Numrich v. Ntekpere*, 2013 WL 10545882 at *3 (D.Or., Feb. 14, 2013).

In *Decker v. GEMB Lending, Inc.*, this court granted a motion to dismiss plaintiff's negligence claim against a lender and debt collector who allegedly attempted to collect on a previously-settled debt on the grounds that the law does not recognize a special relationship between debt holder or collectors and borrowers. *Decker v. GEMB Lending, Inc.*, 2012 WL 5304144, (D.Or., Sep. 13, 2012) (holding that "the relationship between [plaintiff and defendant] was contractual, which does not give rise to a special relationship"); *see also Culpepper v. Wells Fargo Bank, N.A.*, 2013 WL 3199673 at *4, (D.Or., June 19, 2013) (dismissing negligent infliction of emotional distress claim against lender due to the lack of special relationship between borrower and lender).

Even under the older, pre-*Twombly* and *Iqbal* pleading standards, this Court has long recognized that dismissal of a negligence-based complaint for economic loss is proper unless the complaint demonstrates the existence of a legally cognizable special relationship between the parties. *See Wright v. Kia Motors America Inc.*, 2007 WL 316351 at *4-5, (D.Or., Jan. 29, 2007) (dismissing negligence lawsuit against vehicle manufacturer because court could "find no

Page 5 –   REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY
           COMPLAINT

authority to support a claim for negligent misrepresentation against a seller or manufacturer engaging in an arm's length transaction with the purchaser of their products."). So too here. This Court should dismiss Third-Party Plaintiffs' negligence and negligent misrepresentation claims because the third-party complaint does not plausibly allege the existence of a special relationship between Third-Party Plaintiffs and Marsh.

Third-Party Plaintiffs attempt to sidestep the third-party complaint's deficiencies by adding new— unpleaded—allegations to their opposition brief. Specifically, Third-Party Plaintiffs now contend that the sub-broker agreement was the basis for a "symbiotic" and "non-adversarial" relationship "to service a single client." Opp. at 7. Even taking this unpleaded allegation as true, Third-Party Plaintiffs could not point to a single case in which any court—in any jurisdiction—held that co-insurance brokers were in a special relationship with each other. Indeed, by Third-Party Plaintiffs' logic, any two parties to any contract could be deemed to be in a special relationship, which utterly defeats the purpose of the economic loss rule, and is contrary to well-established law.

As this Court has held, "when the relationship between two parties arises out of a contract, one party cannot bring a negligence claim against the other party unless the other party is subject to a standard of care independent of the terms of the contract." *Fleshman* 27 F. Supp. 3d at 1137 (holding that no special relationship exists between lender and borrower, or loan servicer and borrower), citing *Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or. 97, 106 (1992); *Medici v. J.P. Morgan Chase, N.A.*, No. 03:11-cv-00959-HA, 2014 WL 199232, at *3, (D.Or. Jan. 15, 2014) (holding that one is not liable for economic loss outside the ability of plaintiff to show some sort of duty outside the common law of negligence). Third-Party Plaintiffs have not

shown—because they cannot show—that Marsh owed any duties to Third-Party Plaintiffs independent of the terms of the sub-broker agreement. Third-Party Plaintiffs do not allege they were clients of Marsh, or even that Marsh's work was intended to benefit Third-Party Plaintiffs, which are threshold requirements for the existence of a special relationship. *See, e.g. Conway v. Pacific University*, 243 Or. 231, 240-41 (1996) (In special relationships, as opposed to ordinary contractual agreements, "one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party.")

If Third-Party Plaintiffs had a good faith belief that Marsh violated its obligations to AJG under the Sub-Broker Agreement, Third-Party Plaintiffs should have pursued an action for breach of the Sub-Broker Agreement. Third-Party Plaintiffs did not do so, presumably because Marsh (in contrast to AJG) did not violate the sub-broker agreement. Regardless, Third-Party Plaintiffs do not possess cognizable negligence or negligent misrepresentations claims against Marsh because, as a matter of law, there was no special relationship between Marsh and Third-Party Plaintiffs.

### 3. This Court Should Dismiss Third-Party Plaintiffs' Contribution Claim Because Third-Party Plaintiffs Fail To Plausibly Allege that Marsh is Liable to Plaintiff in Tort

To state a claim for contribution, Third-Party Plaintiffs must show that it is plausible that Marsh is liable to the University in tort. Under ORS 31.800, "where two or more persons become jointly or severally in tort for the same injury to person or property . . . there is a right of contribution among them even though judgment has not been recovered against all or any of

Page 7 –   REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT

them." Crucially, there "is no right of contribution from a person who is not liable in tort to the claimant." *Id.* Here, the third-party complaint fails because it does not make the required showing that Marsh is liable to the University in tort.

Third-Party Plaintiffs seek to rescue their contribution claim by arguing, for the first time in their opposition brief, that a special relationship existed between Marsh and the University, which Third-Party Plaintiffs contend gives rise to the possibility that Marsh could be liable to the University in tort. Opp. at 8-9. Even if this Court is somehow inclined to consider this unpleaded allegation, which appears nowhere in the Complaint or the third-party complaint, the undisputed facts show that no such special relationship existed. And even if a special relationship did at some time exist between Marsh and the University, that relationship was severed when the University elected to use AJG as its insurance broker instead of Marsh. In *Galbraith v. MML Investor Services*, this Court dismissed a negligence claim filed against MML Investor Services ("MML"), which employed a securities broker, Charles Rhodes, who engaged in a Ponzi scheme to the detriment of his clients. *Galbraith v. MML Investor Services, Inc.* 2009 WL 4955617 at *1-2 (D.Or. Dec. 11, 2009). On August 31, 1998, Rhodes left MML, and the Plaintiff moved his brokerage account to Rhodes's new firm. *Id.* When Rhodes's Ponzi scheme inevitably collapsed, plaintiff sued MML for negligence in its capacity as Rhodes's former employer, even for investments plaintiff made after Rhodes was no longer employed at MML. *Id.* at *4. This Court granted MML's motion to dismiss, reasoning that "MML's duties to [plaintiff] extend only to investments made while [] Rhodes acted as MML's representative. Once the special relationship ended, MML had no right of control with respect to [plaintiff's] subsequent investments with Mr. Rhodes." *Id.* Consequently, this Court concluded that

Page 8 –    REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY
            COMPLAINT

Ball Janik LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503.228.2525

"MML's duty did not extend to these subsequent investments, even though the act of future investment itself may have been a foreseeable consequence of duties breached during the special relationship." *Id.*

Here, it is undisputed that the University elected to use AJG—not Marsh—as its broker. To the extent a special relationship existed at the time that the University purchased its contractual bonus insurance policy, any such relationship was between AJG and the University. Assuming that a special relationship ever existed between Marsh and the University with regard to the transaction at issue, the special relationship ended when the University decided not to engage Marsh's services, and instead purchased the insurance through its own broker of record, AJG.

This case bears no resemblance to *Meininger v. Henris Roofing and Supply of Klamath County, Inc.*, which is the sole authority Third-Party Plaintiffs rely on for the proposition that there was a special relationship between the University and Marsh. Opp. at 9, citing *Meininger v. Henris Roofing and Supply of Klamath County, Inc.*, 137 Or. App. 451 (1995). In *Meininger*, a home seller hired a roofing expert specifically to opine on the condition of the home's roof for the prospective buyer. The buyer relied on the expert's opinion, which turned out to be inaccurate. In the instant case, the alleged facts are much different. The University asked Marsh to obtain an insurance quote, and Marsh did so. Amended Complaint, ¶5, Ultimately, the University elected to use the services of a different broker, AJG, and the University directed its questions regarding the prospective coverage to AJG, not Marsh. Amended Complaint, ¶¶10, 14-16. Crucially, Third-Party Plaintiffs do not deny these allegations. Third-Party Complaint ¶¶14-16. The only plausible inference from these allegation is that AJG, not Marsh, had a

Page 9 –   REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT

Ball Janik LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503.228.2525

special relationship with the University at the time that the University purchased the insurance policy at issue. Viewing the third-party complaint as a whole, Third-Party Plaintiffs fail to plausibly allege that Marsh had a special relationship with the University, or that Marsh is otherwise liable to the University in tort. Accordingly, this Court should dismiss Third-Party Plaintiffs' contribution claim pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Third-Party Plaintiffs' Breach of the Sub-Broker Agreement is Relevant to This Court's Resolution of Marsh's Motion to Dismiss

Third-Party Plaintiffs argue that this Court should disregard Third-Party Plaintiffs' breach of the Sub-Broker Agreement for purposes of Marsh's Motion to Dismiss.[4] Opp. at 9. Not so. Third-Party Plaintiffs' breach of the Sub-Broker Agreement is relevant to this Court's resolution of the Motion to Dismiss because the breach illustrates and gives further weight to the sheer implausibility of Third-Party Plaintiffs' tort claims against Marsh, and shows that Third-Party Plaintiffs cannot possibly meet the heightened *Twombly* and *Iqbal* pleading standards. As described above, the Sub-Broker Agreement dictates the terms of the relationship between Marsh and Third-Party Plaintiffs, including the parties' respective rights and obligations. *See* Third-Party Complaint ¶84. Third-Party Plaintiffs cannot allege that Marsh violated the Sub-Broker Agreement (because, in fact, Third-Party Plaintiffs are the ones who violated the Sub-Broker Agreement by interpreting coverage for the University without Marsh's written consent). As

---

[4] Third-Party Plaintiffs apparently concede that the Sub-Broker Agreement is appropriately part of the record for purposes of this Motion to Dismiss because it was incorporated by reference into the third-party complaint. *See Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 429-30 (9th Cir. 1978) (documents attached to complaint are properly part of court's review because the court is not limited to the mere allegations contained in the complaint); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (courts may consider materials that are not attached to the complaint but that are incorporated by reference).

Page 10 – REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT

described in Marsh's Motion to Dismiss, Third-Party Plaintiffs' breach of the Sub-Broker Agreement is obvious in light of the terms of the Sub-Broker Agreement (forbidding Third-Party Plaintiffs to give written interpretations of coverage without Marsh's consent) and Third-Party Plaintiffs' admission that Ms. Drummer did exactly that by emailing the University with an interpretation of coverage without consulting Marsh. Third-Party Complaint, ¶¶14-16.

Lacking a breach of contract claim, Third-Party Plaintiffs instead improperly attempt to assert negligence-based claims against Marsh. But those claims fail as a matter of law because of the lack of a special relationship between Marsh and Third-Party Plaintiffs. Third-Party Plaintiffs' contribution claim also fails because the third-party complaint does not plausibly allege that Marsh is liable to the University in tort. Instead, the only plausible explanation is that Third-Party Plaintiffs' potential liability to the University is the result of Third-Party Plaintiffs' own errors and omissions (*i.e.*, allegedly incorrectly interpreting the terms of the proposed insurance policy in response to Plaintiff's questions). The key allegation in the University's complaint is that the University asked Third-Party Plaintiffs to confirm that the proposed policy would cover every single bonus award that the University's football coaches could potentially receive, and that Third-Party Plaintiffs answered that question incorrectly. All of the University's claims rely on Third-Party Plaintiffs' alleged misstatements, not on any errors or omissions on the part of Marsh. As such, the third-party complaint fails to plausibly assert any actionable claims against Marsh.

## CONCLUSION

This Court should dismiss all of Third-Party Plaintiffs' claims against Marsh, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can

Page 11 – REPLY IN SUPPORT OF MARSH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT

Ball Janik LLP
101 SW Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503.228.2525

be granted. This Court should dismiss Third-Party Plaintiffs' negligence and negligent misrepresentation claims because the third-party complaint seeks damages for economic losses but does not plausibly allege the existence of a special relationship between Marsh and Third-Party Plaintiffs. In addition, this Court should dismiss Third-Party Plaintiffs' contribution claim because the third-party complaint does not plausibly allege that Marsh is liable in tort to the University, which is a required element of any cause of action for contribution.

DATED: September 8, 2015                    Respectfully submitted,

                                By: /s/ Gabriel M. Weaver
                                    James T. McDermott, OSB # 933594
                                    Gabriel M. Weaver, OSB 125970
                                    Telephone: 503-228-2525
                                        *Attorneys for Third-Party Defendant Marsh*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing REPLY IN SUPPORT OF THIRD-PARTY DEFENDANT MARSH'S MOTION TO DISMISS THIRD-PARTY COMPLAINT FOR FAILURE TO STATE A CLAIM AND MEMORANDUM OF LAW IN SUPPORT by:

- [ ] U.S. POSTAL SERVICE;
- [x] CM/ECF;
- [ ] FACSIMILE SERVICE;
- [ ] ELECTRONIC MAIL;
- [ ] ARRANGING FOR HAND DELIVERY;
- [ ] FEDERAL EXPRESS.

addressed as follows on the date stated below:

Bob Steringer
Harrang Long Gary Rudnick, PC
1001 SW Fifth Avenue, 16th Floor
Portland, OR 97204
   *Attorneys for Plaintiff*

John E. Zehnder
Scheer & Zehnder LLP
701 Pike Street, Suite 2200
Seattle, WA 98101

Robert P. Schulhof
Scheer & Zehnder LLP
101 SW Main Street, Suite 1600
Portland, OR 97204
   *Attorneys for Defendants Monica Drummer, and Arthur J. Gallagher Risk Management Services, Inc.*

DATED: September 8, 2015.

/s/ Gabriel M. Weaver
Gabriel M. Weaver, OSB 125970
Ball Janik LLP
Telephone: 503-228-2525
   *Attorneys for Third-Party Defendant Marsh*

Page 1 –   CERTIFICATE OF SERVICE